UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LARRY DARNELL GIBSON,

      Plaintiff,

v.            Case No. 19-cv-45-pp

DR. CHESTER, *et al.*,

      Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT (DKT. NO. 2) AND DENYING MOTION TO APPOINT COUNSEL (DKT. NO. 7)**

---

  The plaintiff, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, his motion for appointment of counsel, dkt. no. 7, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

  The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may

allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 9, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $16.19. Dkt. No. 5. The court received that fee on January 25, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee, and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Plaintiff's Complaint**

    A.     Federal Screening Standard

Although the plaintiff has demonstrated that he does not have the money to pay the filing fee, the court must dismiss his complaint if he has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether the complaint must be dismissed under these standards.

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1)

someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   The Plaintiff's Allegations

The plaintiff, an inmate at the Kettle Moraine Correctional Institution, appears to suffer from epilepsy. Dkt. No. 1 at 3. He has sued eight defendants—Dr. Chester, Dr. McClean, C.O. Firkus, Sgt. McBride, "warden (John Doe) or Paul Kemper," John Doe Captain, Nurse Vaughn and Nurse "Kate." Id. at 1-2.

The plaintiff was housed at the Milwaukee Secure Detention Facility (MSDF) from March 5, 2018 through October 12, 2018. https://appsdoc.wi.gov/lop/detail.do. The plaintiff alleges that between March 5, 2018 and April 6, 2018, defendants Dr. Chester and Dr. McClean deprived him of his seizure medication, Levetiracetam. Id. at 3. The plaintiff says that McClean "was warned twice," and he even called the plaintiff to his office, but the plaintiff still did not receive his medication. Id. The plaintiff says that he suffered "many breakdowns and had numerous episodes" before being locked in his cell on April 5, 2018, where he had an epileptic seizure. Id. at 3–4. The

plaintiff says that this seizure almost killed him, because defendants C.O. Firkus and Sgt. McBride overlooked his need for immediate help. Id. at 4.

The plaintiff asserts that before his seizure, his eyes were "bloody red" and he knew he "was in bad shape." Id. He pressed the emergency button in his cell, and Firkus asked what his emergency was. The plaintiff told Firkus his head was hurting and he couldn't breathe and asked Firkus to call for the nurse. Firkus told the plaintiff to fill out a form. Id. The plaintiff says that he asked for help "again, and again, and again." Id. The plaintiff says that McBride said she would call a nurse but never did so (he does not say when this occurred). Id. at 4–5. The plaintiff believes that McBride and Firkus were angry that the plaintiff kept pushing his emergency call button. Id. at 5. He indicates that the man who was in the room with him kicked and banged for help, eventually getting an officer, who radioed for help. Id. The plaintiff asserts that he begged Firkus and McBride for help for what "had to be well over an hour," and that they left him to die. Id.

The plaintiff says that he lost consciousness, and that there was blood everywhere; it is not clear whether this happened on the day he had the seizure at MSDF, or on another occasion he described, where he "fell out" in the back of his grandmother's house. Id. When he woke up, defendant Nurse Vaughn was standing over him. There was blood everywhere, and the plaintiff felt numb. His head was "busted open," and the bleeding wouldn't stop. The plaintiff couldn't stand up. Id. The plaintiff alleges that although the paramedics had arrived, Vaughn elected to try to stop the bleeding, which

4

delayed the paramedics by fifteen to thirty minutes in transferring him to the hospital. Id. The plaintiff says that at the hospital, he received his medication and doctors glued his head wound and stitched it up. Id. at 6.

The plaintiff says that when he returned to the prison, no staff wanted to be associated with the harm he'd experienced. Id. He was moved to a lower bunk and left to sleep in a coma-like state for days. He asserts that no staff member or nurse checked on him. Id. He says that he reinjured his back, and "even that issue went unnoticed." Id. The plaintiff alleges that when he began filing complaints, the staff began to retaliate, including McBride, who put him in a cell without water for days. Id. He asserts that another officer had to let him out of the cell at four in the morning to get water. Id. He says that neither McBride nor other staff put in a work order. Id.

The plaintiff also alleges that "the captain" failed to report the abuse the plaintiff experienced on the mental health/special needs unit. Id. He goes on to say that "what was happening to [him] was a crime" and that defendant Nurse Kate saw his bloody red eyes and that he couldn't breathe earlier that morning. Id.

The plaintiff believes that the defendants denied him help and treated him unfairly because he was "upset on their housing unit about feeling [he] was incarcerated wrongly." Id. at 4. He seeks actual damages of $200,000 from Chester, McClean, Firkus, McBride, the warden and the captain; $60,000 from Vaughn, $100,000 from Kate; and $3,000,000 in punitive damages. Id. at 7.

### C. The Court's Analysis

#### 1. *Applicable Law*

The plaintiff does not say whether he was a pretrial detainee or a convicted prisoner at the time of the events he describes. He could have been either; MSDF houses both Division of Adult Institutions inmates and offenders being held on probation or parole holds. "[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley* [v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466 (2015)]." Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018). The Kingsley Court held that a pretrial detainee alleging an excessive force claim "did not need to prove that the defendant was *subjectively* aware" that the amount of force he was using was unreasonable, and needed "only to show that the defendant's conduct was *objectively* unreasonable." Id. at 351, citing Kingsley, 135 S. Ct. at 2472-72. To establish that the standard of medical care he received violated the Fourteenth Amendment, a pretrial detainee must show (1) that he suffered from an objectively serious medical condition, see Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005), and (2) that jail personnel "purposefully, knowingly, or perhaps even recklessly" disregarded a serious risk to his health or safety when treating the condition, Miranda, 900 F.3d at 35-354. Negligence or even gross negligence is not enough. Id. Instead, a defendant's conduct must be objectively unreasonable, which means that the conduct must be "more than negligence . . something akin to reckless disregard[.]" Id.

6

In contrast, the Eighth Amendment's deliberate indifference standard applies to convicted prisoners. Miranda, 900 F.3d at 350 (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by prison doctors in response to prison needs or by prison guards intentionally denying or delaying access to medical care.'" Lewis v. McLean, 864 F.3d 556, 562 (7th Cir. 2017) (quoting Estelle, 429 U.S. at 104). A deliberate indifference claim contains both an objective and a subjective component. "[A] prisoner must first establish that his medical condition is 'objectively, sufficiently serious,' and second that prison officials acted with 'a sufficiently culpable state of mind'—i.e., that they both knew of and disregarded an excessive risk to inmate health." Id. at 562-64 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "To determine if a prison official acted with deliberate indifference, [courts] look into his or her subjective state of mind." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996)). "[S]howing negligence is not enough." Id. (citing Estelle, 429 U.S. at 106). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." Id. (citing Farmer, 511 U.S. at 836-38). "[A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." Id. (citing Farmer, 511 U.S. at 837). "In cases where prison officials delayed rather than denied medical

7

assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir. 2013) (quoting Williams v. Liefer, 491 F.3d 710, 714-15 (7th Cir. 2007)).

Both standards—the objectively unreasonable standard applicable to pretrial detainees and the subjective standard applicable to convicted prisoners—require courts to determine whether the plaintiff had an objectively serious medical need. "Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Cesal v. Moats, 851 F.3d 714, 721 (7th Cir. 2017) (quoting Estelle, 429 U.S. at 104-105).

2. *Discussion*

The Seventh Circuit has held that an inmate's "unmedicated epileptic condition" constituted a serious medical need. Hudson v. McHugh, 148 F.3d 859, 863 (7th Cir. 1998). A district court has held that "seizures resulting from epilepsy constitute a serious medical need." Cummings v. Quakenbush, Case No. 1:12-cv-01538-JMS-DML, 2013 WL 5603933, at *12 (S.D. Ind. Oct. 10, 2013). The court concludes that the plaintiff had a serious medical need when he was at the MSDF in the spring of 2018.

The plaintiff has alleged that Chester and McClean "deprived" him of his seizure medication for over thirty days, and that this is what caused him to have the seizure. Although the plaintiff has not explained how Chester and

8

McClean knew he needed the medication, or what they did to deprive him of it, the court finds at this early stage that the plaintiff has alleged sufficient facts to allow him to proceed on a deliberate indifference claim against Chester and McClean.

As for Firkus, the plaintiff alleges that Firkus answered when he pushed his emergency button, and when he told Firkus that his head was hurting, that he couldn't breathe and that he needed a nurse, Firkus told him to fill out a form. The plaintiff says that he repeatedly asked for help, and was denied it. He says he begged for help for over an hour. While the plaintiff does not allege that he told Firkus he had epilepsy, he has stated sufficient facts for the court to allow him to proceed on a claim that Firkus was deliberately indifferent to his complaints and requests for help.

The plaintiff alleges that McBride told him she would call for a nurse, but didn't do so. He says that like Firkus, McBride ignored his cries for help for over an hour. These facts are sufficient for the court to allow the plaintiff to proceed on a deliberate indifference claim against McBride.

The plaintiff complains that Vaughn acted "unfairly" when she delayed the paramedics from taking him to the hospital because she was trying to stop the bleeding from his head. He asserts Vaughn's decision delayed him getting to the hospital by fifteen to thirty minutes. This is a closer call—it sounds like Vaughn may have used her professional judgment to determine that it was more critical that she try to stop the plaintiff's head wound from bleeding than

to transport him while it was bleeding. But for now, the court will allow the plaintiff to proceed on a deliberate indifference claim against Vaughn.

The court will not allow the plaintiff to proceed against Nurse Kate. The only thing the plaintiff says about Kate is that she saw that his eyes were bloody red and that he couldn't breathe that morning. He does not say what Kate did, or did not do, in response. He does not say that Kate knew of his epilepsy, or that he asked her for help. The plaintiff has not stated enough facts for the court to allow him to proceed against Kate.

Nor will the court allow the plaintiff to proceed against the John Doe captain. He alleges that the captain failed to report the abuse he experienced on the mental health/special needs unit. But he does not say what that abuse was, how the captain was involved, or how the captain knew about it. The plaintiff has not provided enough facts for the court to allow him to proceed against the John Doe captain.

The court will also dismiss the John Doe Warden/Paul Kemper as a defendant. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). The plaintiff has not alleged that the warden had any involvement in denying him his epilepsy medication, or in the events that took place on April 5, 2018.

Finally, the plaintiff alleges that McBride retaliated against him after he got back to the MSDF, by putting him in a cell where the water didn't work for fifteen days. To establish a claim of retaliation under the First Amendment, a

plaintiff must show that he engaged in a protected activity, that he suffered a deprivation likely to prevent future protected activities, and that there was a causal connection between the two. See Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). The plaintiff engaged in a protected activity when he filed grievances about what had happened to him on April 5, 2018. Hughes v. Scott, 816 F.3d 955, 956 (7th Cir. 2016). He has alleged that he suffered a deprivation—McBride put him in a cell with no water. And the plaintiff has alleged that she did it because he filed the grievances. The court will allow the plaintiff to proceed on a First Amendment retaliation claim against McBride.

### III.    Motion to Appoint Counsel

The plaintiff also filed a motion asking the court to appoint counsel to represent him. Dkt. No. 7. He says that he has physical, mental and emotional problems that would make it hard for him to represent himself, that he is not experienced in the law and that his case will require extensive discovery. Id.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person must make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson

to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

Since filing his complaint, the plaintiff has filed a letter advising the court that he has written to several lawyers (as well as talking to one in person), but that he hasn't been able to find one to represent him. Dkt. No. 9. The court concludes that the plaintiff has satisfied the initial requirement of trying to find an attorney on his own.

Regarding the second factor—whether the difficulty of the case, factually or legally, exceeds the plaintiff's ability to present it—it is too soon for the court to tell whether that is the case. The court was able to understand the allegations in the plaintiff's complaint, and it is allowing the plaintiff to proceed on some of those claims. The next step in the process is for the court to serve the complaint on the defendants. Once the defendants receive the complaint, they will have a certain amount of time to answer the complaint, or to respond to it in some other way. Until the defendants respond to the complaint in some way, there is nothing for the plaintiff to do. The court will deny his motion to appoint counsel as premature, but he may renew the motion later if he finds himself confronted with tasks that he believes he cannot accomplish.

The court notes, for the plaintiff's benefit, that almost every inmate who files a lawsuit asks the court to appoint a lawyer. Most of them have no money,

have no legal training and have only limited access to the law library. Many have physical, mental or emotional problems. The court does not have money to pay lawyers to represent everyone who asks, and there are not enough volunteer lawyers to provide counsel for everyone who asks. This means that the court appoints counsel only in those cases where the issues are so complicated that the plaintiff cannot explain them himself. The court shares this information with the plaintiff so that he is aware of what the court will have to consider if, or when, he renews his motion to appoint counsel.

**IV.  Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 7.

The court **ORDERS** that Nurse Vaughn, Nurse Kate, John Doe Captain and John Doe Warden/Paul Kemper are **DISMISSED** as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court a copy of this order and the plaintiff's complaint will be electronically transmitted to the Wisconsin Department of Justice for service on defendants Dr. Chester, Dr. McClean, C.O. Firkus and Sergeant McBride. The court **ORDERS** defendants Chester, McClean, Firkus and McBride to file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $333.81 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will **REFER** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 23rd day of September, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**