LARRY DARNELL GIBSON,

                Plaintiff,

v.                                                Case No. 19-cv-45-pp

DMITRIY CHESTER, *et al.*,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 26, 32) AND DENYING MOTION TO STRIKE PLAINTIFF'S SUR-REPLY DOCUMENTS (DKT. NO. 58)**

       Larry Darnell Gibson, a Wisconsin state prisoner who is representing himself, is proceeding on claims against the defendants based on his allegations that they failed to provide him adequate health care for his seizure disorder and retaliated against him when he complained. Dkt. No. 10. There are two "sets" of defendants—Dmitriy Chester, David Firkus and Quianna McBride, who are represented by the Wisconsin Department of Justice ("the state defendants"), and Joseph McLean, who is represented by private counsel. Both sets of defendants have moved for summary judgment on the ground that the plaintiff failed to exhaust his available administrative remedies before he filed this case. Dkt. Nos. 26, 32. McLean also moved to strike to plaintiff's sur-reply materials. Dkt. No. 58. The court will deny McLean's motion to strike, grant both motions for summary judgment and dismiss this case.

1

## I.  Motions For Summary Judgment (Dkt. Nos. 26, 32)

### A. Procedural Posture

Civil Local Rule 56(b)(2)(B) (E.D. Wis.) requires a party who opposes a motion for summary judgment to file "a concise response to the moving party's statement of facts" within thirty days of service of the summary judgment motion. The "concise response" must contain "a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." Civil L.R. 56(b)(2)(B)(ii).

On December 20, 2019, Magistrate Judge William E. Duffin, the judge to whom the case was referred for pretrial management, issued a scheduling order. That order included a copy of the relevant local rules, including Civil L.R. 56. Dkt. No. 22. On February 12, 2020, the state defendants filed their motion for summary judgment. Dkt. No. 26. They attached Civil L.R. 56 to the motion (as Civil Local Rule 56(a) required them to do, given that the plaintiff is representing himself), so the plaintiff received the rule a second time. Id. When McLean filed his motion for summary judgment, he also included the required copy of the rule, providing it to the plaintiff a third time. Dkt. No. 32. On February 21, 2020, Judge Duffin issued an order denying without prejudice the plaintiff's motion to appoint counsel. Dkt. No. 37. In that order, Judge Duffin explained what the plaintiff would need to do to properly respond to the motions for summary judgment and to the proposed findings of fact. Id. at 4–5.

When Judge Duffin issued a text only order on April 6, 2020 giving the plaintiff more time to respond to the state defendants' additional proposed facts, he reminded the plaintiff of the consequences of not responding and encouraged him to look at his previous order. Dkt. No. 48.

Despite receiving Rule 56(b)(2)(B) three times and receiving from Judge Duffin an explanation of how to respond to summary judgment and another reminder to follow the rule, the plaintiff did not follow the rule. He filed separate responses—one to the state defendants' proposed findings, dkt. no. 39, and one to McLean's, dkt. no. 40. Neither response, however, reproduces each numbered paragraph as required by Civil L.R. 56(b)(2)(B). The responses are identical other than the last paragraph of each response. Most of the responses constitute argument. A couple of times, the plaintiff references his own complaint in support of his objections. In other places, he references a string of documents generally, or says, "documents provided in support of this matter," without identifying the documents.

The court will treat as unopposed any proposed finding of fact by the defendants to which the plaintiff objected but did not provide a specific cite to record evidence. The court will consider the plaintiff's declaration to the extent it is based on personal knowledge and relevant to the issue of exhaustion. Dkt. No. 41.

    B.    <u>Events Giving Rise to the Complaint</u>

The plaintiff suffers from epilepsy. Dkt. No. 10 at 3. He alleged that between March 5, 2018 and April 6, 2018, while he was in custody at the

Milwaukee Secure Detention Facility, defendant doctors Chester and McLean deprived him of his seizure medication. Id. The plaintiff asserted that this led to his having an epileptic seizure on April 5, 2018, while locked in his cell. Id. The plaintiff claimed that Corrections Officer Firkus and Sgt. McBride, despite seeing that he was in bad shape prior to the seizure and despite the plaintiff having repeatedly asked them for help, did not respond and left him alone to die. Id. at 3-4. The plaintiff asserted that after he returned from the hospital, he started filing complaints, and that McBride retaliated against him by putting him in a cell without water for days. Id. at 5.

C.  Facts Relevant to Exhaustion

The events described in the preceding paragraph occurred while the plaintiff was an inmate incarcerated at the Milwaukee Secure Detention Facility ("MSDF"). Dkt. No. 28 at ¶1; Dkt. No. 34 at ¶1. He was at MSDF on a probation/parole hold issued by the Department of Community Corrections ("DCC Hold"). Dkt. No. 28 at ¶1; Dkt. No. 34 at ¶1. The plaintiff was transferred to Dodge Correctional Institution in October 2018, and then to the Kettle Moraine Correctional Institution on December 4, 2018. See Wisconsin Offender Locator, https://appsdoc.wi.gov/lop/home.do. The plaintiff remains at Kettle Moraine.

Emily Davidson (not a defendant) works for the Department of Corrections ("DOC") as a Corrections Complaint Examiner ("CCE") at the DOC's Central Office in Madison, Wisconsin. Dkt. No. 28 at ¶2; Dkt. No. 34 at ¶2. She has access to the Inmate Complaint Tracking System, which is a database that

stores all documents and reports submitted and generated through the Inmate Complaint Review System ("ICRS"). Id. Michelle Bones (not a defendant) works at Racine Correctional Institution as the Institution Complaint Examiner ("ICE") and also works as an ICE at MSDF. Dkt. No. 28 at ¶3; Dkt. No. 34 at ¶3.

On April 11, 2018, two inmate complaints the plaintiff had dated April 4, 2018 were returned to the plaintiff because he had not used the correct form.[1] Dkt. No. 28 at ¶4; Dkt No. 34 at ¶4. ICE Kesha Packer (not a defendant) supplied him with the correct form and directed him to resubmit the complaints if he needed to. Id. She also advised him to follow the chain of command and address his issues with the Unit Manager. Id. Based on Bones' review of the Inmate Complaint Tracking System and the returned complaints the plaintiff had submitted, the defendants assert that there is no indication that the plaintiff ever resubmitted the two complaints returned to him on April 11, 2018. Dkt. No. 28 at ¶ 5; Dkt. No. 34 at ¶5.

On June 13, 2018, the ICE office received inmate complaint MSDF-2018-13733. Dkt. No. 28 at ¶6; Dkt. No. 34 at ¶6. The plaintiff identified the "Date of Incident" as April 5, 2018 and then mistakenly wrote that "On 5/4/18,"[2] defendant Firkus ignored the plaintiff's requests for help when he pushed the emergency call button and told the plaintiff to fill out a Health Service Request.

---

[1] April 4, 2018 was the day before the plaintiff suffered the seizure.

[2] The court assumes the defendants describe this as a mistake because the plaintiff suffered the seizure on *April* 5, 2018, not May 5, 2018.

5

Id. The defendants assert that the plaintiff also complained that no nurse came for over an hour and a half despite defendant McBride saying one had been called. Id. The defendants also characterize the complaint as asserting that the plaintiff had a seizure shortly thereafter "because he had not received his seizure medication for 30 days." Id.

Packer rejected the plaintiff's complaint on June 25, 2018 because the plaintiff had filed it outside the fourteen-day time limit to file an inmate complaint. Dkt. No. 28 at ¶7; Dkt. No. 34 at ¶7. Packer checked for good cause to accept a late complaint. Id. She noted that the plaintiff had been at MSDF since March 5, 2018 and that there was no indication that he was inhibited in any way from filing inmate complaints.[3] Id. The rejection was printed and distributed on June 25, 2018 at 11:28 a.m. Dkt. No. 28 at ¶8; Dkt. No. 34 at ¶8.

The defendants assert that the plaintiff did not appeal to the reviewing authority at MSDF. Id. The plaintiff contends that he *did* file a timely appeal and mail it "to the proper address at MSDF," but that the MSDF staff never responded. Dkt. No. 39 at 2, third paragraph; Dkt. No. 40 at 2, third paragraph. The plaintiff says that "[u]pon transfer," he became concerned and spoke with staff, who told him to file another complaint about the lack of

---

[3] The plaintiff's response correctly notes that while the plaintiff may have been at MSDF since March 5, 2018, the seizure didn't take place until April 5, 2018. Dkt. No. 39 at 2, second paragraph; Dkt. No. 40 at 2, second paragraph. The court infers that the plaintiff is questioning the relevance of his having been at MSDF since March 5, given the date of his seizure; the court agrees. The more relevant question is why he waited more than two months—from April 5, 2018 to June 13, 2018—before filing a complaint about the events of April 5.

6

response to the appeal. Id. He alleges that he did so; he says he filed complaint DCI-2018-24758, asking "the facility to acknowledge [his] appeal in order to exhaust [his] administrative remedies." Id. The plaintiff asserts that "[t]hey" never acknowledged his appeal, "[a]nd responded 51 days later." Id. The plaintiff says that he provided documents in support of these assertions, id., but he does not identify those documents. There were no documents attached to either of the plaintiff's responses to the defendants' proposed findings.

The defendants provided a copy of DCI-2018-24758. Dkt. No. 29-3 at 8-9. The plaintiff dated the complaint December 1, 2018 (while he was at Dodge). Id. at 8. In that complaint, the plaintiff stated the issue as "[l]ack of response to initial complaint(s) or the appeal I filed at (MSDF)." Id. at 8. For relief, he asked for "[a]cknowledgement of Appeal/decision/complaint in order to exhaust administrative remedies." Id. The body of the complaint described the events surrounding the April 5, 2018 seizure, and concluded that the plaintiff "still filed appeals and haven't heard back from (MSDF) in months." Id. at 9. The complaint is stamped "Received" by the Dodge ICE office on December 3, 2018. Id. Dodge officials referred it back to the ICE office at MSDF for a response. Dkt. No. 28 at ¶9; Dkt. No. 34 at ¶9.

Packer reviewed DCI-2018-24758 on January 23, 2019—fifty-one days after the date the Dodge ICE received the complaint. Dkt. No. 28 at ¶10; Dkt. No. 34 at ¶10. Packer reviewed her rejection of MSDF-2018-13733—the June 13, 2018 complaint that she'd rejected because it wasn't timely filed. Id. She noted that while the plaintiff had asserted that he'd been late in filing the June

7

13, 2018 complaint because he had to "heal up," this did not constitute good cause for the late filing. Id. She asserted that the plaintiff had been at MSDF since March 5, 2018 and had had access to the inmate complaint process the whole time. Id. This complaint also was rejected. Id.

The defendants asserted that the plaintiff did not appeal the rejection to the reviewing authority. Dkt. No. 28 at ¶11; Dkt. No. 34 at ¶11. The plaintiff responded, "Objection, non-response from the facility allowed the plaintiff to proceed with his lawsuit which was done so on January 7, 2019 due to lack of response from MSDF." Dkt. No. 39 at 3, third paragraph; Dkt. No. 40 at 3, third paragraph.

The defendants assert that the plaintiff did not file an inmate complaint concerning his allegations that defendant McBride retaliated against him for filing inmate complaints by placing him in a cell without water when he returned from the hospital. Dkt. No. 28 at ¶12; Dkt. No. 34 at ¶12. The plaintiff responded that McBride "controlled and prevented" him from filing grievances through "unconstitutional acts of intimidation, misrepresentation, retaliation, and psychological pressure which created fear within" him. Dkt. No. 39 at 3, final paragraph. In his response to the state defendants' proposed findings of fact, he made a number of new allegations against McBride, including that she left family visitors waiting without telling him they were there and putting him on the floor in a room with a man with an infectious blood disorder. Id. He insists that McBride did many frightening things to him, the worst of which was putting him in the cell with no water. Id. He asserts that he has three

8

witnesses—Richard Steinsal, Troy Hart and C.O. McWilliams, id.—but provided no declarations. He asserts that his psychological file would show that he asked to be moved off the unit, id., but he did not provide that file. He asserted in his declaration that he was "horribly met by acts of intimidation and retaliation by staff," including being placed in the "worst cells, including a cell that did not have any working water." Dkt. No. 41 at ¶14. The declaration does not mention McBride.

Defendant McLean also contended that the plaintiff did not mention McLean in complaint MSDF 2018-13733 or complaint DCI-2018-24758. Dkt. No. 34 at ¶12. The plaintiff asserts that he didn't know McLean's name, but that he still "reported the incident" to the authorities "in the hope that someone in power would step in and investigate [the plaintiff] being off [his] epileptic seizure medication." Dkt. No. 4 at 3, last paragraph. He says that no one stepped in, even though he acted "responsibly by reporting [his] serious medical need and deprivation of epileptic medication." Id. He again makes new allegations not made in the complaint, asserting that he was in McLean's office on different occasions where his need for epileptic medication was "addressed," but that McLean did not give him his medication. Id. He says he learned McLean's name while at Dodge. Id. The plaintiff reiterated these allegations in his declaration. Dkt. No. 41 at ¶¶6-8.

The plaintiff states in his declaration that grievance forms "disappeared" when he tried to complain, requiring him to use regular paper. Dkt. No. 41 at ¶13. He asserts that this allowed his complaints "to be tossed, denied,

9

returned, or rejected." Id. He says that the housing unit staff "finally" gave him complaint forms, but that they were the incorrect forms, which allowed his complaints "to be rejected or denied again." Id.

    D.    Discussion

        1.    *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

10

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### 2. *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and it produces a "useful administrative record" for the district court to rely on. Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because agencies generally resolve claims much faster than federal courts. Woodford, 548 U.S. at 89. A district court "lacks discretion to resolve the claim on the merits" if the prisoner fails to properly exhaust administrative remedies. Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner must "properly use the prison's grievance process" prior to filing a case in federal court. Id. "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[I]t is the prison's requirements . . . that

11

define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

To exhaust administrative remedies through Wisconsin's Inmate Complaint Review System, an inmate first must file an offender complaint with the ICE within fourteen calendar days of the event giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2).[4] The ICE can accept late filings for "good cause," but that decision is up to the ICE. Id.; see also §DOC 310.07(8). The ICE can return any complaint that does not meet the criteria in §§DOC 310.07(1), (3), (4) and (5) within ten days. §DOC 310.10(5). The inmate then has ten days to file a corrected complaint. Id.

If the ICE does not return the complaint, the ICE either rejects the complaint or sends a recommendation to the appropriate reviewing authority within thirty days. §DOC 310.10(9). If the ICE rejects the complaint, the inmate has ten days to appeal the rejected complaint to the reviewing authority, who reviews only the basis for the rejection and whose decision is final. §DOC 310.10(10). If the ICE sends the complaint to the reviewing authority, the reviewing authority has 15 days to affirm or dismiss the complaint in whole or in part or return the complaint to the ICE for further investigation. §§DOC 310.11(1), (2). If the inmate is dissatisfied with the result, he can appeal to the Corrections Complaint Examiner ("CCE") within fourteen days and the CCE will make a recommendation to the DOC Secretary. §§DOC 310.12(1), (9). If the

---

[4] On April 1, 2018, a new version of Wis. Admin. Code §DOC 310 went into effect.

12

inmate doesn't receive a decision from the reviewing authority within forty-five days, he can appeal to CCE. §DOC 310.11(3).

   3. *Analysis*

The plaintiff filed two complaints, dated April 4, 2018 (before his seizure); these were returned to him on April 11, 2018 because he did not use the proper forms. The ICE told the plaintiff how to fix the errors and reminded him of the requirement that he try to resolve the issue by speaking to the Unit Manager. See §DOC 310.07(1). So—one day before the plaintiff suffered his seizure, he knew that he needed to use the appropriate form and that he needed to try to resolve any concerns with the Unit Manager before filing a complaint.

The plaintiff next filed MSDF-2018-13733, which he signed on June 13, 2018, some two months after he had his seizure and went to the hospital. The ICE rejected this complaint as untimely. While the plaintiff asserts that he timely appealed that rejection, the court has no evidence other than the plaintiff's word to support that claim. See §DOC 310.05 ("Before an inmate may commence a civil action . . . the inmate shall exhaust all administrative remedies the department has promulgated by rule.") The same is true with the final relevant complaint, DCI-2018-24758. The ICE at MSDF, to whom the complaint was returned for review, rejected the complaint as untimely. The plaintiff does not dispute that he did not appeal that rejection.

The plaintiff argues that his ability to timely file his inmate complaints was impeded by lack of access to the proper forms and intimidation and

13

retaliation by prison staff. Dkt. No. 41 at ¶¶13–14. But the plaintiff raised these arguments for the first time in this federal lawsuit.

An ICE has the discretion to accept a late-filed inmate complaint for "good cause." Wis. Admin. Code §DOC 310.07(2). For the ICE to be able to consider whether there is a good cause for a late complaint, the inmate "shall request to file a late complaint *in the written complaint* and *explicitly provide the reason* for the late filing." Id. (emphasis added). In both his June 2018 complaint at MSDF and his December 2018 complaint at Dodge, the plaintiff said his complaint was late because he needed time to heal after his seizure on April 5, 2018. Dkt. No. 29-2 at 6; Dkt. No. 29-3 at 9. The ICE considered this explanation and rejected it, finding it was not sufficient to excuse the untimely complaint.

Whether the plaintiff had good cause for failing to timely file his complaint "is not a decision for the court to make in the first instance." Smith v. Martin, No. 14-cv-429-wmc, 2016 WL 3830565, at *3 (W.D. Wis. July 12, 2016). Instead, "Wisconsin's regulations give complaint examiners discretion to determine whether an untimely filing should be accepted for good cause." Id. "Thus, the place for making arguments about 'good cause' is to the institution, not here. Otherwise, the state's limit could simply be ignored and an inmate could come straight to federal court." Id.; see also Bowers v. Husz, No. 08-C-197, 2009 WL 2605217, at *1 (E.D. Wis. Aug. 24, 2009) ("It is not for this Court to determine what kinds of complaints the state should allow to be filed tardy,

14

or else the state's time limit could simply be ignored and an inmate could come straight to federal court. That is not what the PLRA provides.").

The plaintiff did not argue in the complaint supporting this lawsuit that he did not have access to the proper forms or that his failure to raise certain grievances was the result of intimidation and retaliation. Dkt. No. 29-2 at 6; Dkt. No. 29-3 at 9. Accordingly, the plaintiff waived those arguments. As the Wisconsin Court of Appeals has explained in interpreting §DOC 310.09(6) (now renumbered as §DOC 310.07(2)),

> if the inmate believes there are facts constituting "good cause," he or she must advise the institution complaint examiner by means of including the asserted facts in the complaint. The failure to reasonably apprise the institution complaint examiner, by means of the complaint itself, of the facts the inmate believes constitute "good cause'" waives the inmate's right to later complain that his or her complaint should have been accepted late for "good cause."

State ex rel. Laurich v. Litscher, 275 Wis. 2d 769, 778; see also Smith, 2016 WL 3830565 at *3 (finding that plaintiff waived arguments for why late complaint should be accepted by failing to raise it before complaint examiner); Jones v. Nelson, No. 15-cv-831-bbc, 2018 WL 1953907, at *1–2 (W.D. Wis. Apr. 25, 2018) (finding that plaintiff failed to present argument about why grievance system was unavailable because he did not provide his reasons for late grievance to complaint examiner); Cordova v. Frank, No. 07-C-172-C, 2007 WL 2188587, at *6 (W.D. Wis. July 26, 2007) (finding plaintiff failed to exhaust administrative remedies where he failed to provide prison officials with grounds for considering his untimely appeal).

15

The complaint examiner did not abuse her discretion in concluding that the plaintiff did not timely file his complaints or appeal those complaints. The plaintiff has not provided the court with evidence supporting his arguments that the complaint examiner abused her discretion. The plaintiff raised for the first time in his response to the defendants' motions his arguments about why he did not file complaints alleging that McBride retaliated against him and why he did not mention McLean in his complaints. The plaintiff could have filed a complaint against McBride—he chose not to do so. He could have explained in his federal court complaint why he did not file inmate grievances against McLean; he did not so do.

The plaintiff has not exhausted his claims.

## II. Motion To Strike Sur-Reply Documents (Dkt. No. 58)

Defendant McLean filed a motion asking the court to strike four documents that the plaintiff filed on May 5, 2020. Dkt. No. 58. After the state defendants filed their reply brief and additional proposed findings of fact, Judge Duffin gave the plaintiff time to respond to those facts in an April 6, 2020 text only order. The plaintiff did so. Dkt. Nos. 52, 55. But he also filed four other documents not authorized by the court or by local rule. See Civil L.R. 7(i); Civil L.R. 56.

First, the plaintiff filed an "Affidavit and Letter of Concern," in which he stated that he needed more discovery and that the defendants used tactics to punish, defy their own rules, flaunt their power and stop him from filing complaints. Dkt. No. 53. In the second filing, titled "Affidavit and Letter

16

Requesting Court to Dismiss all Defendants' Motions for Summary Judgment," the plaintiff argued that the motions should be denied because the defendants violated the court's order to stay discovery and filed a document relating to his bed assignment to which he did not have access. Dkt. No. 54. The third and fourth documents constitute sur-reply briefs in which the plaintiff argues more about why his failure to exhaust should be excused. Dkt. Nos. 56, 57.

The court has reviewed these documents. None impact or change the court's conclusion that the plaintiff did not present his reasons for failing to timely filing his complaints to the ICE and that he raises them here for the first time. The plaintiff still has not demonstrated that he exhausted his administrative remedies or that the inmate complaint system was not available to him. The court understands why McLean moved to strike these documents, but there is no reason to strike them when they do not impact the court's analysis or conclusion. The court will deny the motion.

### III. Conclusion

The court **GRANTS** the defendants' motions for summary judgment. Dkt. No. 26, 32.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** and will enter judgment accordingly.

The court **DENIES** defendant McLean's motion to strike the plaintiff's sur-reply documents. Dkt. No. 58.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by

filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 24th day of September, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**